UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

ROSEMARY MCCLAIN,                  )
                                   )
        Plaintiff,                 )
v.                                 )        No. 6:26-CV-33-REW
                                   )
COMMISSIONER OF                    )        OPINION & ORDER
SOCIAL SECURITY,                   )
                                   )
        Defendant.                 )

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Rosemary McClain appeals the denial of her application for Supplemental Security Income ("SSI"). *See* DE 1 (Complaint). McClain filed a brief in support of the appeal following the Commissioner's answer. *See* DE 10 (Plaintiff Brief). The Commissioner responded in opposition, advocating for affirmance of the Administrative Law Judge's ("ALJ") decision. *See* DE 13 (Commissioner's Brief). McClain timely replied. *See* DE 14 (Plaintiff Reply). The administrative record appears at DE 9 ("R." Administrative Transcript). The Court, after careful review of the ALJ's decision and the pertinent administrative record, finds the decision supported by substantial evidence and compliant with Agency rules and regulations. Therefore, the Court **DENIES** McClain's appeal and **AFFIRMS** the Commissioner's denial of SSI.

## I.    Background

On August 31, 2022, McClain applied for SSI, alleging disability beginning on March 11, 2022, due to hearing loss, insomnia, lower back pain, vision problems, and inability to read. *See* R. at 207-213, 241. The Agency denied her claim initially, *see id.* at 89-98, and again on reconsideration, *see id.* at 103-110, eventually leading to a sought administrative hearing before Administrative Law Judge Karen R. Jackson on February 23, 2024, *see id.* at 47-64. Judge Jackson

ultimately concluded that McClain was not "disabled" within the meaning of the Social Security Act. *See id.* at 7-26. McClain requested review of Judge Jackson's decision, and on April 4, 2025, the Appeals Council denied McClain's request after finding no basis for review, making Judge Jackson's decision the final agency decision. *See id.* at 1-6. This appeal ensued.

Judge Jackson's decision tracked the five-step sequential evaluation process for determining whether an individual is disabled.[1] *See* 20 C.F.R. § 416.920(a). The decision also followed the special technique used to evaluate the severity of mental impairments and the associated functional consequences on the claimant's ability to work. *See id.* § 416.920a(a). At the first step, Judge Jackson determined that McClain had not engaged in substantial gainful activity. R. at 12; 20 C.F.R. § 416.920(a)(4)(i).[2] At the second step, Judge Jackson determined that McClain had the following severe impairments[3]: post-traumatic stress disorder (PTSD); bipolar I disorder; and adjustment disorder. R. at 12; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920a(b)(1). At the third step, Judge Jackson determined that McClain does not have an impairment or a combination of impairments that meets or medically equals one of the impairments listed in Appendix 1 to Subpart P of Part 404. R. at 13; 20 C.F.R. § 416.920(a)(4)(iii). As part of the second and third step of the sequential evaluation process, Judge Jackson rated the degree of the functional limitations resulting from McClain's medically determinable mental impairments using the four categories and five-point scale described in § 416.920a(c)(3)-(4). Judge Jackson found that McClain had a (1) mild limitation in understanding, remembering, or

---

[1] A "disability" is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

[2] Generally, substantial gainful activity is work activity that involves doing significant physical or mental activities (substantial) and is usually done for pay or profit, realized or not (gainful). 20 C.F.R. § 416.972(a)-(b).

[3] A claimant has a severe impairment if she has an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

applying information; (2) moderate limitation in interacting with others; (3) mild limitation in concentrating, persisting, or maintaining pace; and (4) moderate limitation in adapting and managing oneself. *See* R. at 14. Judge Jackson explicitly noted that these limitations are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *See id.* Claimant does not specifically object to the analysis at this step.

Before reaching the fourth step, Judge Jackson assessed McClain with the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: understand and remember simple instructions; use judgment to make simple work-related decisions; occasional interactions with supervisors and co-workers; occasional interactions with the public; carry out simple instructions; and deal with occasional changes in a routine work setting.

R. at 15; 20 C.F.R. § 416.920(a)(4). At the fourth step, Judge Jackson found that McClain had no past relevant work.[4] R. at 18; 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, Judge Jackson found that, considering McClain's age, education, work experience, and assessed RFC, there are jobs that exist in significant numbers in the national economy that McClain can perform. R. at 19; 20 C.F.R. § 416.920(a)(4)(v).[5] Relying on the vocational expert's testimony, Judge Jackson found that McClain would be able to perform the requirements of the following occupations: machine feeder, hand packer, laundry folder, and produce sorter. R. at 19. Based on

---

[4] Judge Jackson therefore properly proceeded to the fifth step. *See* 20 C.F.R. § 416.920(h) ("If we…do not have sufficient evidence about your past relevant work to make a finding at the fourth step, we may proceed to the fifth step of the sequential evaluation process.")

[5] "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry…the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

this analysis, Judge Jackson concluded that McClain was not disabled as of the application date. *See id.* at 20.

## II.    Legal Standard

Judicial review of an ALJ's disability determination is a limited and deferential inquiry. *See Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).  The district court's focus is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

An "ALJ's legal rulings, including his interpretation of relevant laws and regulations," are reviewed de novo. *Linden v. Comm'r of Soc. Sec.*, 131 F.4th 531, 534 (6th Cir. 2025) (citing *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018)).  An ALJ's interpretations of language "contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . . are 'entitled to respect,' . . . but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 120 S. Ct. 1655, 1662–63 (2000) (internal citations omitted) (quoting *Skidmore v. Swift & Co.*, 65 S. Ct. 161, 164 (1944)).  While social security rulings are "agency rulings published under the authority of the Commissioner of Social Security," and are thus "binding on all components of the [SSA]," they are only persuasive to the Court.  *Sullivan v. Zebley*, 110 S. Ct. 885, 891 n.9 (1990) (internal quotation omitted) (citing *Heckler v. Edwards*, 104 S. Ct. 1532, 1534, n.3 (1984)).[6]  The ALJ must

---

[6] *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), expressly overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778, 2781–83 (1984), which required courts to give deference to an agency's reasonable interpretations of ambiguous provisions contained in the statutes that the agency administers.  However, *Loper Bright* did nothing to alter the basic principle of *Skidmore* deference that applies to an agency's reasonable interpretations of its own policy statements,

4

follow agency rules and regulations, and a failure to do so "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

Factual determinations, on the other hand, are conclusive if supported by substantial evidence. *Linden*, 131 F.4th at 534 (citing 42 U.S.C. § 405(g)). The Supreme Court has explained that this is not a high evidentiary threshold. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). A factual determination is supported by substantial evidence "if there is 'more than a mere scintilla' of evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541, 545 (6th Cir. 2025) (quoting *Biestek*, 139 S. Ct. at 1154).

Given the deference featured in the substantial evidence standard, the Court does "not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor will the Court reverse the ALJ's determination merely because the record contains evidence to support a different conclusion, even if that evidence is substantial. *Norris*, 139 F.4th at 545. Rather, the Court must affirm if substantial evidence supports the ALJ's decision, though the Court might have decided the case differently standing in a primary decision. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011).

---

agency manuals, and enforcement guidelines. *See Loper Bright Enters.*, 144 S. Ct. at 2259 (citing *Skidmore*, 65 S. Ct. at 164).

### III.   Analysis

McClain's sole contention is that Judge Jackson's RFC determination is not supported by substantial evidence[7] because "the ALJ failed to weigh the opinion evidence in accordance with the regulations." *See* DE 10 at 1.[8] As discussed above, Judge Jackson assessed McClain with an RFC "to perform a full range of work at all exertional levels" with certain nonexertional limitations, including: "understand and remember simple instructions; use judgment to make simple work-related decisions; occasional interactions with supervisors and co-workers; occasional interactions with the public; carry out simple instructions; and deal with occasional changes in a routine work setting." R. at 15. A claimant's RFC is the most she can do in a work setting despite her physical and mental limitations. *See* 20 C.F.R. § 416.945(a); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."). The determination of a claimant's RFC is an administrative assessment reserved for the ALJ. *See id.* § 416.946(c).

As a claim filed on or after March 27, 2017, 20 C.F.R. § 416.920c governs how ALJs consider and articulate medical opinions. Under this regulation, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider a medical opinion using the factors listed in 20 C.F.R. § 416.920c(c)(1)-(5), with supportability and consistency as the most important factors. *See id.* In assessing supportability, "[t]he more relevant the objective medical evidence and

---

[7] And by extension, McClain argues that the vocational expert's testimony is not supported by substantial evidence because the hypothetical question "must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

[8] At one point in her brief, McClain states that the "issue here is whether the ALJ properly applied 20 C.F.R. § 416.916(c) and weighed the evidence correctly." DE 10 at 10. There is no subsection (c) of § 416.916, a section dealing with a claimant failing to submit medical evidence, which obviously does not apply here.

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2). The ALJ must articulate how she considered the supportability and consistency factors for a medical source's medical opinion, and she may, but is not required to, discuss the remaining factors. *See id.* § 416.920c(b)(2).

McClain first critiques the weight given to Dr. Roan-Belle's opinion, contending that Judge Jackson erred by discounting Dr. Roan-Belle's opinion on the degree of limitation regarding McClain's ability to maintain attention and concentration. *See* DE 10 at 12. After conducting a consultative examination, Dr. Roan-Belle found that McClain is moderately limited in her ability to maintain attention and concentration for extended periods, leading to her opinion that McClain "can sustain attention, concentration, effort, and pace for simple tasks requiring little independent judgment and involving minimal variations, and doing so for extended periods of two-hour segments[.]" R. at 70-72. Judge Jackson, on the other hand, found that McClain has only a mild limitation in this area such that a two-hour segment limitation was unnecessary. R. at 17. McClain characterizes Dr. Roan-Belle's opinion as consistent with the opinions of Drs. Stevens-Watkins, Breeding, and Cecil, as well as McClain's administrative hearing testimony, where she testified that she had a hard time concentrating. *See* DE 10 at 11. McClain concludes that "Dr. Roan-Belle's opinion is supported by relevant objective medical evidence and her supporting

7

explanation and consistent with the evidence from other medical sources and nonmedical sources." *Id.* at 12.

As discussed above, a district court will not reverse the ALJ's decision merely because there is evidence, even substantial evidence, to support a different conclusion. *Norris*, 139 F.4th at 545. That Dr. Roan-Belle's opinion is arguably well-supported is not grounds for reversal. Thus, the Court is left with McClain's bare argument that Judge Jackson did not properly weigh the opinion evidence in accordance with the regulations, which the Court rejects.

Judge Jackson properly considered Dr. Roan-Belle's opinion in accordance with § 416.920c, considering and articulating the supportability and consistency factors. Judge Jackson considered the underlying support for Dr. Roan-Belle's opinion, acknowledging that the "consultants supported their opinions with reported daily activities and findings from the consultative examination." *See* R. at 17. Judge Jackson also compared her opinion to other medical evidence in the record, namely, the evidence of McClain's ongoing and historical mental health treatment and findings. *See id.* Notably, Judge Jackson largely agreed with Dr. Roan-Belle's opinion, finding it "mostly persuasive." *See id.* Indeed, the nonexertional limitations encompassed in McClain's RFC reflect the full gravamen of Dr. Roan-Belle's opinion. *See id.* at 15. Judge Jackson slightly deviated from Dr. Roan-Belle's opinion on the issue of concentration based on other record evidence Judge Jackson interpreted as indicating a lesser degree of limitation. For example, Judge Jackson noted that despite McClain's reported concentration struggles, her attention during a mental status examination at a November 2022 visit at Whitesburg Behavioral Health Clinic was "adequate." *See id.* at 14 (citing R. at 507). Further, Judge Jackson did not view a moderate limitation in concentration, persistence, and pace as entirely consistent with McClain's mental health treatment records, which noted, from Jackson's audit, racing

8

thoughts, anxious or depressed mood, cooperative attitude, full affect, clear speech, normal thought content, average intelligence, and normal insight and judgment. *See id.* at 17. This balancing of opinion evidence with other medical evidence in the record is what the regulations require. In sum, Judge Jackson faithfully considered the factors of supportability and consistency and satisfactorily articulated those factors with respect to Dr. Roan-Belle's opinion, all in accordance with 20 C.F.R. § 416.920c.

Notably, of course, Judge Jackson had examined Claimant under oath and had before her the full record. Thus, her opinion reflects recognition that McClain had given inconsistent answers on literacy, was effectively living alone, had performed jobs while imprisoned, testified to physical limitations far removed from the record, and had, during a key consultative exam, created significant concerns about suspected malingering and lack of testing effort, which invalidated results. *See* R. at 15-16. The ALJ obviously folds into any determination the credibility of persons in the record before her.

The real matters at issue concern debate over Roan-Belle's use of the degree "moderate," and over the durational limit Roan-Belle otherwise assigned. As to the language question, both sides are right, to a degree. Roan-Belle, in the format of the SSA system, noted "mild" limitation as to McClain's ability to "concentrate, persist, or maintain pace." R. at 68. However, she also characterized McClain as "moderately limited" in her ability to "maintain attention and concentrate for extended periods." *Id.* at 71. Roan-Belle formulated an MRFC, which Stevens-Watkins later confirmed. *Id.* at 71-72; 81. The Skaggs CE undergirded both, and Judge Jackson also found Skaggs's views persuasive. *Id.* at 18. Importantly, the RFC Judge Jackson employed followed that of Roan-Belle in all significant parts as to nonexertional limitations, although Jackson did eschew a temporal limit. Thus, Roan-Belle assigned "simple tasks requiring little

9

independent judgment and involving minimal variations, and doing so for extended periods of two-hour segments." *Id.* at 71-72. Jackson simply viewed the durational limit as not warranted for what she determined to be mild impairment of CPP. *See id.* at 14; 17 (deeming durational limits unnecessary "as the claimant has only mild limitations" in CPP). Certainly, the Skaggs assessment, relied on by Roan-Belle and by Judge Jackson, deemed the sustained concentration ability as slight to moderate. *See id.* at 409-14. That evaluation also had repeatedly noted concern about malingering by McClain.

In the end, Judge Jackson assessed the RFC with substantive fidelity to the views of Roan-Belle, to the degree "mostly persuasive." She deviated, based on her supported record findings and the degree of CPP limitation determined, hewing closer to the conclusions of the Skaggs CE, itself the primary source cited by Roan-Belle. In the end, the Court sees inconsequential daylight between RFC versions as to this case and record. The "two-hour segment" is a normal job characteristic for the employment discussed (here, the VE referenced unskilled SVP 2 jobs), essentially equivalent to no limitation. This squares with the Agency's persuasive view, expressed in its Program Operations Manual System's Mental Limitations policy, which is that mental ability "for any job" requires "the ability to maintain concentration and attention for extended periods (i.e., the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." As to "unskilled work," the variety at issue in this case, the standard is "Maintain attention for extended periods of 2-hour segments (concentration is not critical)." POMS DI 25020.010(B)(3)(d). The cases have taken the same view, that a 2-hour segment of CPP ability essentially is an attribute of any unskilled work. *See Radosevich v. Kijikazi*, No. 22-CV-763, 2023 WL 2743932, at *4 (E.D. Wis. Mar. 31, 2023) ("[A] restriction to two-hour segments of concentration is no limitation at all."); *Ciro M.B. v. Kijakazi*, No. 21-1069-JWL, 2022 WL

1026885,  at *3 (D. Kan. Apr. 6, 2022) ("[M]aintaining attention for extended periods of 2-hour segments is an ability critical for performing unskilled work, but concentration is not critical."); *see also Terrey v. Berryhill*, 696 F. App'x 831, 833-34 (9th Cir. 2017)  (discussing 2-hour segment import).    Notably, Claimant's attorney did not, in cross-examination, propose the durational limit to the VE.[9]

McClain's argument is even less persuasive as applied to Dr. Breeding's opinion.  Dr. Breeding completed a largely check-box physical residual functional capacity questionnaire in April 2023, opining on McClain's purported physical and mental limitations.  *See* R. at 274-77. Dr. Breeding opined that McClain is incapable of even low stress jobs, can sit for about two hours and stand for less than two hours in an eight-hour workday, and requires a job that permits shifting positions at will, unscheduled breaks every 30 minutes, and only occasional lifting of less than 10 pounds.  *See id.* at 276.  His break suggestion, astonishingly, was 10 minutes for each half-hour. Judge Jackson found Dr. Breeding's opinion unpersuasive.  *See id.* at 18.  Regarding McClain's physical limitations, Judge Jackson found the opinion minimally supported and inconsistent with "objective findings from the consultative examination, spinal imaging showing mild degenerative changes, normal gait, and mild shoulder arthritis."  *Id.* (citing R. at 394-408, 421, 608, 614-16, 633, 711, 1018).    Judge Jackson also rejected Dr. Breeding's assessment of McClain's mental limitations, again finding the opinion inconsistent with the "largely normal" mental health findings of record, mainly those records referenced in her assessment of Dr. Roan-Belle's opinion.  *See id.* Judge Jackson also specifically cited direct records, pertinent to if not contemporaneous with the timeframe, that did not square with the views cursorily entered in Breeding's RFC questionnaire. *Id.* at 18 (citing records with "normal" psych reviews, including report of no difficulty

---

[9] And in this appeal, Claimant does not challenge the Step 3 "mild" determination regarding CPP, which Judge Jackson made.  R. at 14.

11

concentrating (R. at. 615-16), 633 (same),  717 (including various "normal" references), 1017-18) (same)).

McClain disputes Judge Jackson's characterization of Dr. Breeding's opinion as minimally supported and inconsistent, and she offers counter evidence in support of and consistent with Dr. Breeding's opinions.  *See* DE 10 at 12-14.  Once again, the Court rejects the portion of McClain's argument that merely offers evidence in the record that agrees with Dr. Breeding's opinion.  It is simply not the Court's role to reweigh the evidence or substitute its judgment.  *See Bass*, 499 F.3d at 509; *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019).  Judge Jackson accounted for the full record, including conflicting parts, which is the job of the ALJ.

McClain asserts that Judge Jackson ignored pertinent medical evidence that supports Dr. Breeding's opinions relating to McClain's mental limitations.  *See* DE 10 at 12.  But the records McClain suggests Judge Jackson ignored are the same records, or contain the same substantive information, that Judge Jackson cited as showing normal mental health findings.  This included a series of records from Dr. Breeding's own office, throughout his year of interaction, replete with "normal limits" observations, as cited at R. at 17.  Clearly then, Judge Jackson did not ignore pertinent medical evidence or "cherry-pick the record to support her conclusion," but instead merely weighed the comprehensive evidentiary record differently than McClain desires.  This is not proper grounds for reversal, as "we are not the ALJ, and we have no license to reassess the record anew."  *Preston v. Comm'r of Soc. Sec.*, No. 22-4206, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023).

McClain also argues that Dr. Breeding's opinion regarding McClain's physical limitations is not minimally supported, arguing that Dr. Breeding "likely" formed his opinion based on McClain's records with Mountain Comprehensive Health Corporation. *See* DE 10 at 13-14.  The

Breeding document itself references little in terms of objective support (with interactions about 5 times in 11 months and references, where legible, to reduced ROM and low-back pain). McClain bears the burden of proof at this step, *see Jones*, 336 F.3d at 474, and mere speculation about a possible source of support falls short. But even accepting that Dr. Breeding's opinion was based on the available MCHC records, Judge Jackson was well within her right as the weigher of evidence to reject the opinion due to noted inconsistencies with the other medical evidence. Judge Jackson thoroughly considered the objective medical evidence that contradicts Dr. Breeding's assessment of McClain's physical limitations. *See* R. at 394 (X-rays indicating only mild degenerative spine changes with no sign of fracture or dislocation and negative lumbosacral spine), 421 (upon exam of lumbar spine, determining no acute findings, alignment abnormalities, or significant changes), 614-16 (review of systems indicating McClain denied abnormal gait, myalgias, arthralgias, limited range of motion, and numbness), 711 (showing mild shoulder arthrosis). Moreover, it is worth reiterating that Dr. Breeding rendered his opinions through a check-box analysis with a few fill-in-the-blank questions, which ALJs may permissibly afford little weight. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016). At bottom, Judge Jackson did not err in finding this assessment unpersuasive since she found it inconsistent with the medical evidence. Again, the ALJ surveyed the full record, including the content pertinent to Claimant's own presentation and credibility. Judge Jackson's conclusion is one a reasonable mind can accept as sufficient to support the findings, thus adequately supported.

## IV.    Conclusion

For the foregoing reasons, the Court **DENIES** McClain's appeal and **AFFIRMS** the Commissioner's denial of SSI.  The Court will issue a separate Judgment.

This the 10th day of July, 2026.

Signed By:

Robert E. Wier

United States District Judge